**SOUTHEASTERN, INC., a Corporation, Plaintiff in Error,**

v.

**OKLAHOMA TAX COMMISSION, Defendant in Error,**

No. 38657.

Supreme Court of Oklahoma.

April 12, 1960.

G. Ellis Gable, Chas. P. Gotwals, Jr., Jack N. Hays, Tulsa, for plaintiff in error.

E. J. Armstrong, Oklahoma Tax Commission, Oklahoma City, for defendant in error.

JOHNSON, Justice.

This is a statutory proceeding brought to review the final order of the Oklahoma Tax Commission sustaining an assessment of use taxes against Southeastern, Inc., a contractor.

The admitted facts are that Southeastern was a private contractor and obtained a contract pursuant to competitive bidding by private contractors using F. H. A. mortgage financing to finance and build an armed services housing project, or, as referred to by protestant, a "Capehart Project," consisting of 700 housing units. The contract designated Southeastern as the "eligible builder" and required it as contractor to perform a "turn-key job" for a lump-sum consideration. The contract provided among other things that all profits that may accrue through the housing con-

tract accrue to the benefit of the contractor, or eligible builder, and not to the mortgagor-builder, and that "nothing in this (the) invitation for bids shall be deemed to relieve the contractor or eligible builder of any liability for the payment of sales or use taxes properly levied."

The amount of the use tax levied and collected on purchases of tangible personal property admittedly purchased by Southeastern and its subcontractors outside of this State and brought into this State to be used by it in the construction of the project is unquestioned. Only a legal question is posed.

Southeastern contends that "the immunity that Southeastern asserts is the Government's immunity, not its own; that it as a taxpayer stands in the Government's shoes. The immunity is not asserted because, as a matter of dollars and cents it may affect the Government, but because, by the dealings with the Government, in effect, Southeastern, in this instance, has become a quasi-Federal instrumentality or moving force for the purposes of this contract arrangement." Citing and relying on United States v. Allegheny County, 332 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209, and other similar cases. And argue that the decision in this case should rest on the construction of the contractual arrangements involved in this particular "Capehart Project," as Southeastern and other suppliers to this project are not asking for a general tax exemption, but only for the proper Federal immunity from the State taxation to which they claim they are entitled by virtue of the particular dealings by the Federal Government itself through the Department of the Air Force.

The tax was imposed and collected by virtue of 68 O.S.1951 §§ 1251C, 1310 et seq. The use tax was enacted with intention that the purchase of tangible personal property outside this State should be subject to payment of the use tax if such property would have been subject to the sales tax had it been purchased within this State, Id., 68 O.S.1951 §§ 1251C, 1310

et seq. The use tax is an excise tax which the state is authorized to exact, in connection with the sales tax, for the primary purpose of raising revenue for state purposes and is designed to prevent consumers from escaping sales tax by going outside of the state and purchasing property and bringing it into the state for use or consumption, Id. 68 O.S.1951 §§ 1251C, 1310 et seq., and within the meaning of the Use Tax Act contractors are users and consumers and not vendors of personal property used by them in carrying out provisions of lump-sum construction contracts. Id. 68 O.S.1951 § 1310 et seq. See also Harding v. Oklahoma Tax Commission, Okl., 275 P.2d 264 and cited cases.

Using these statutory provisions and the case of Harding v. Oklahoma Tax Commission, supra, and cases cited therein, as the basis or as authority, the Commission interposes a counter proposition to the contentions of Southeastern to the effect that Southeastern and its subcontractors and suppliers are subject to the sales or use tax on all tangible personal property purchased for and used in the construction of the Altus Air Force Base Capehart Building Contract and other similarly situated contractors or vendors of contractors are likewise subject to tax.

In this connection Southeastern does not claim any direct congressional affirmative action which would exempt it from payment of the use tax levied and assessed against it at this time. However, it does claim and argues that through the method of contracting and the provisions of the contract, together with the interpretations of the federal agencies, including the Federal Housing Administration, make the judicial determination by this Court one which should be predicated upon the consideration of the contract by the contracting parties and the relationship borne by them; asserting that we are not bound by the form or nomenclature of the tax in determining whether there is an evasion of Federal immunity, but that we should look to the substance to determine the nature and effect of the levy, citing

Carpenter v. Shaw, 50 S.Ct. 121, 280 U.S. 363, 74 L.Ed. 478. In other words, Southeastern contends that under the circumstances herein there is an implied immunity of government contractors from state taxation.

In dealing with the immunity of government contractors from state taxation, the Court in Esso Standard Oil Co. v. Evans, 1953, 345 U.S. 495, 73 S.Ct. 800, 97 L.Ed. 1174, stated that it must find either a stated immunity created by Congress in the exercise of a constitutional power, or one arising by implication from our constitutional system of dual government.

Admittedly, in the instant case, there is no stated immunity created by Congress in the exercise of its constitutional power; and from our examination of the contractual relationship between the parties and the contractual provisions and facts relating thereto as hereinbefore narrated, there is no immunity arising by implication from our constitutional system of dual (federal and state) government. Oklahoma Tax Commission v. Texas Co., 336 U.S. 342, 69 S.Ct. 561, 93 L.Ed. 721.

■ There being no stated immunity created by Congress, no implied constitutional immunity from local taxation is given to private persons for their ordinary business operations, even though they are performed in connection with governmental activities. Id., Oklahoma Tax Commission v. Texas Co., supra.

The tax in this case being a sales or use tax, the cases cited by Southeastern, including United States v. Allegheny County and others, supra, involving ad valorem taxes are not available as controlling authority when applied to the facts herein.

■ By reason of the foregoing facts, applicable statutes, Harding case, and other cases, supra, and for the reasons given herein, the order of the Oklahoma Tax Commission must be, and is, affirmed.

DAVISON, C. J., WILLIAMS, V. C. J., and HALLEY, BLACKBIRD, JACKSON, and IRWIN, JJ., concur.