Jerry R. MELTON, Petitioner,

v.

A. C. F. WRIGLEY, INC. and State Industrial Court, Respondents.

No. 39240.

Supreme Court of Oklahoma.

Oct. 3, 1961.

As Corrected Oct. 26, 1961.

Andrew L. Hamilton, Oklahoma City, for petitioner.

Pierce, Mock, Duncan, Couch & Hendrickson, Oklahoma City, Fred M. Mock, George F. Short, II, Oklahoma City, of counsel, for respondents.

IRWIN, Justice.

Under challenge in this proceeding is the order denying an award based on the trial tribunal's determination that claimant was not engaged in any class of employment enumerated in or defined as hazardous by the Workmen's Compensation Act.

There is no dispute as to the material facts. Employer as a corporation operating a number of retail food stores in Oklahoma and in Texas. In connection with this business employer maintains in Oklahoma City a large central warehouse where its stock of merchandise is assembled, stored and then removed to its stores as needed for retail marketing. The warehouse is equipped with (a) a refrigeration system for cold-storage of perishable com-

modities; (b) conveyors of both the gravity and power-driven type, and (c) "fork-lift" trucks for moving and stacking goods within the floor area. A fleet of tractor-trailers, all manned by employer's personnel, distributes the stock from the warehouse to the individual stores. These vehicles are used for no other purpose than to transport and deliver employer's own merchandise to its retail establishments. Claimant, an operator of one of the tractor-trailers, sustained an accidental injury while unloading a shipment at employer's store in Tulsa, Oklahoma. The trial tribunal's order denying him an award rests on its determination that "The employment of claimant and the operations of the respondent are wholly in the retail grocery sales business, which business is not within the purview of the Workmen's Compensation Act * * *."

■ The law is settled that a person engaged as a driver or deliveryman for a retail concern does not come within the ambit of the Workmen's Compensation Act. Vieth v. Cook, Okl., 331 P.2d 476; Spivey & McGill v. Nixon, 163 Okl. 278, 21 P.2d 1049; Crown Drug Co. v. Hofstrom, 158 Okl. 27, 12 P.2d 519; Havens v. State Industrial Commission, 156 Okl. 160, 9 P.2d 933; Mobley v. Brown, 151 Okl. 167, 2 P. 2d 1034, 83 A.L.R. 1014. This rule remains unchanged in its force and application, even though the employer operates several separate retail stores and in connection with such enterprise maintains a central warehouse for storage of his merchandise. Oklahoma Tire & Supply Company v. Summerlin, Okl., 290 P.2d 403; Montgomery Ward & Co. v. State Industrial Commission, 201 Okl. 165, 203 P.2d 432; Veazey Drug Co. v. Bruza, 169 Okl. 418, 37 P.2d 294; see, also, Sears Roebuck & Co. v. Baker, Okl., 286 P.2d 272. The test ordinarily employed in distinguishing a wholesale from a retail mercantile establishment is not the size or the aggregate volume of its business nor the amount of capital invested, but the nature of the sales being made, i. e., whether for direct consumption or for resale. Skelly Oil Company v. Waters, Okl., 348 P.2d 320; Fetter-

off v. State Industrial Commission, 207 Okl. 77, 247 P.2d 505; Veazey Drug Co. v. Bruza, supra. The evidence does not disclose that employer is engaged in any business other than retail food marketing.

Neither does the record afford any basis for the contention that the storage and transportation phases of employer's operations constituted "separate departments" which were engaged in "public warehousing" and "motor carrier business". The evidence clearly shows that employer's warehouse was used solely for storage of its own stock of merchandise and that its truck fleet carried no cargo for compensation. We are therefore impelled to the view that the warehouse as well as the motor vehicles served as a mere adjunct to employer's single business of retail marketing. Parlor v. John Mongold Drive-In Cafe et al., 204 Okl. 458, 230 P.2d 887; Veazey Drug Co. v. Bruza, supra; Oklahoma Tire & Supply Company v. Summerlin, supra.

■ It is next urged that owing to utilization of power equipment the warehouse premises were transformed into a "workshop" as that term is defined by 85 O.S. 1951 § 3, subdiv. (11). It suffices to say that the machinery located therein was not used in connection with any production, alteration or repair processes, but performed a function merely incidental to preservation, assembly and storage of employer's merchandise prior to its marketing. The mere presence or use of power-driven equipment, we conclude, did not under these facts operate to render the premises a "workshop" within the meaning of the quoted provision of the statute. Skelly Oil Company v. Waters, supra; Rider v. Bob Hiner Service Station, Okl., 321 P.2d 378; Plaza Grill v. Webster, 182 Okl. 533, 78 P.2d 818; Mobley v. Brown, supra, Hurley v. O'Brien, 192 Okl. 490, 137 P.2d 592; Southwestern Grocery Co. v. State Industrial Commission, 85 Okl. 248, 205 P. 929. Claimant relies on: Dalton Barnard Hardware Co. v. Gates, 203 Okl. 268, 220 P.2d 249 and Gates v. Weldon, 203 Okl. 488, 223 P.2d 372. The Dalton case, based on Harbour-Longmire-Pace Co. v. State Industrial Com-

**560**

mission, 147 Okl. 207, 296 P. 456, involved a retail mercantile establishment which conducted a separate and distinct business of manufacturing or repairing goods. In the case of Gates v. Weldon the employer operated, with the use of power equipment, a separate butcher shop where meat-cutting service was extended, at a special charge to the customers who rented cold-storage lockers. These cases were distinguished in Parlor v. John Mongold Drive-In Cafe et al., supra. They have no application to the facts in the cause at bar. We conclude that claimant's duties of delivering merchandise to employer's retail stores did not constitute work connected with, incident to, or an integral part of a hazardous "workshop". Cf. Townley Dairy Farms v. Greenwood, Okl., 321 P.2d 704.

■ Claimant lastly urges that he was engaged in transporting products "processed by a business concern" within the meaning of the 1957 amendment to the Workmen's Compensation Act. See Section 2, H.B. 783, S.L.1957, p. 571 (85 O.S.Supp. 1957 § 2). In support of this argument our attention is drawn to the testimony that vegetables were "segregated" upon the floor of employer's warehouse and "some bagging of potatoes" was being done prior to storage or marketing.

The words "processed" or "processing" are not defined in the cited amendatory enactment and have not heretofore been construed by this court. As generally employed in lay or trade parlance, the term "processing" denotes the subjection of materials to some special mode of treatment performed for the purpose of transforming or reducing the subject-matter to a different state or thing. Until some significant change in marketable form, contour, chemical combination or physical appearance is effectuated, no processing has taken place. Mere sorting of produce or bagging of potatoes prior to or in preparation for the sale does not effect any substantial change in these products and cannot constitute "processing" within the meaning of the statute. Mitchell v. Oregon Frozen Foods Company, 9 Cir., 264 F.2d 599, 601; Corn Products Refining

Co. v. Federal Trade Commission, 7 Cir., 144 F.2d 211, 219; Bedford v. Colorado Fuel & Iron Corp., 102 Colo. 538, 81 P.2d 752, 757. The commodities transported by claimant cannot be classified as products "processed" by the employer.

Since the finding of the State Industrial Court on the question of whether claimant was engaged in hazardous employment is not binding on this court, we have carefully examined the record and hold that the conclusion reached by the trial tribunal is correct. Cooper v. Oklahoma City, Okl., 361 P.2d 483. Claimant was engaged in work incidental to the operation of a retail mercantile establishment and hence his employment did not come within the purview of the Workmen's Compensation Act.

Order denying award is accordingly sustained.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and DAVISON, HALLEY, JOHNSON, JACKSON and BERRY, JJ., concur.